UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY ESTRADA, | No. 2:12-cv-1615 TLN DAD P |
| Petitioner, | |
| vs. | |
| GARY SWARTHOUT, et al., | <u>FINDINGS & RECOMMENDATIONS</u> |
| Respondents. | |

Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Therein, petitioner challenges an April 24, 2010 prison disciplinary conviction for conspiracy to introduce controlled substances into his institution of confinement for sale or distribution.  Petitioner seeks federal habeas relief, arguing he was deprived of procedural due process guaranteed under the Fourteenth Amendment for the following three reasons:  (1) he was not provided a "special assistant" to assist with his defense at his disciplinary hearing; (2) he was not allowed to present witnesses at his disciplinary hearing; and (3) the ultimate disciplinary adjudicatory finding was not supported by sufficient evidence. Upon careful consideration of the record and the applicable law, the undersigned will recommend that federal habeas corpus relief be denied.

/////

/////

1

# I. Background[1]

Petitioner Johnny Estrada is currently being held in the California Department of Corrections and Rehabilitation at California State Prison, Solano, in Vacaville, California under the custody and supervision of the Warden, respondent Gary Swarthout. (Resp't's Answer to Pet. for Writ of Habeas Corpus; Mem. P. & A. ("Answer") (ECF No. 13) at ¶ 1.) The events giving rise to the pending petition occurred while petitioner Estrada was in custody at Deuel Vocational Institute ("DVI") in Tracy, California. (Pet. for Writ of Habeas Corpus ("Pet.") Mem. P. & A. in Supp. Thereof ("Mem. P. & A.") (ECF No. 1) at ¶ 3.)

In March 2010, prison officials received information from an informant that petitioner was involved in a conspiracy to bring controlled substances into DVI for distribution. (Pet. Ex. G, at 1-2.) Based on these allegations, petitioner Estrada was confined to Administrative Segregation ("Ad./Seg.") and charged with "Distribution of Controlled Substances into a State Prison." (*Id.*) Because petitioner Estrada was confined in Ad./Seg., he was assigned an Investigative Employee to assist him in collecting and presenting evidence for his defense to the disciplinary charge. (Pet. Ex. F, at 2.)

As a result of the prison disciplinary charge, petitioner Estrada was also informed that his case was being referred to the local District Attorney ("D.A.") for possible criminal prosecution. (Pet. Mem. P. & A. (ECF No. 1) at ¶ 37.) Petitioner Estrada exercised his right to postpone his disciplinary hearing until after the D.A. decided whether to bring criminal charges. (*Id.*) During this postponement, the assigned Investigative Employee visited petitioner Estrada on April 2, 2010. Petitioner contends that he told the Investigative Employee that "he postponed his disciplinary proceedings pending the outcome of the DA referral and [asked her] if she could please come back after the DA referral . . . ." (Pet. Mem. P. & A. (ECF No. 1) at ¶ 21.) The Investigative Employee's report, however, states: "[I]nmate ESTRADA was uncooperative and did not give any information to me regarding this incident. He said that he did not want to

/////

---

[1] The following background is drawn from the petition for writ of habeas corpus (ECF No. 1) filed by petitioner in this action, unless otherwise noted.

comment on the situation." (Pet. (ECF No. 1), Ex. C at 2.) Ultimately, the D.A. declined to criminally prosecute petitioner Estrada. (Pet. (ECF No. 1), Ex. F at 1.)

Petitioner personally appeared at his prison disciplinary hearing on April 24, 2010. (*Id.*) The hearing officer determined that petitioner Estrada did not meet the criteria for assigning a "Staff Assistant" to assist him with the presentation of his defense at the hearing, finding that he was literate and able to understand and effectively articulate the nature of the prison disciplinary charge and process. (*Id.*) Moreover, although petitioner Estrada was advised that he could request witnesses in connection with the disciplinary hearing, it was noted that "[n]o witnesses were requested." (*Id.* at 1-2.)

The hearing officer considered written evidence presented by DVI officers. Specifically, the hearing officer considered a Crime/Incident Report from the DVI Investigative Services Unit, which provided the details of its investigation into an alleged conspiracy to introduce controlled substances into the prison. (*Id.* at 1.) The investigation uncovered evidence that another inmate, Gonzalez, was communicating with his sister to introduce controlled substances into DVI for the purpose of sale or distribution. (Pet. (ECF No. 1), Ex. G at 1.) DVI officers began monitoring communications between inmate Gonzalez and his sister, Joanna. (*Id.*)

In March 2010, Officer Wilson reviewed an outgoing telephone call between Gonzalez and his sister Joanna which, DVI officials contend, implicated petitioner Estrada. (*Id.*) In the phone call, Joanna informed inmate Gonzalez that she received two checks, one for $50.00 and one for $100.00. (*Id.*) In response to Gonzalez's question asking who the checks were from, Joanna replied: "Silent Estrada from San Jose. Nikki from Los Angeles." (*Id.*) Gonzalez responded: "Contact the 'Muchacho' and tell him you have the money for two, if he can for tomorrow." (*Id.*) Officer Wilson concluded, based on his experience, that this conversation indicated that petitioner Estrada sent Joanna money for the purchase of narcotics, and the term "Muchacho" referred to Florencio Legoretta, a Plant Operations staff member, who was to secrete the purchased narcotics into DVI. (*Id.* at 1, 3.)

The hearing officer also considered testimony from petitioner Estrada himself. At the hearing, petitioner entered a plea of not guilty and stated: "I never spoke with Joanna Gonzalez.

3

I never had any substances since I've been here.  I don't have no money orders taking off my books since I've been here.  I had a urine test." (Pet. (ECF No. 1), Ex. F at 2.)  In response to questions from the hearing officer, Estrada also testified that he knew inmate Gonzalez.  Estrada also admitted that, prior to being incarcerated, he lived in San Jose.  (*Id.*)

Moreover, the hearing officer also considered information from a confidential informant implicating petitioner Estrada.  The hearing officer confirmed that the information was properly deemed confidential because revealing the identity of the source would endanger the safety of the source and jeopardize prison security.  (*Id.* at 3.)  The hearing officer found the confidential informant reliable, because the informant has previously provided accurate confidential information in the past.  (*Id.*)

Based on all of this evidence, the hearing officer found petitioner Estrada guilty of  the prison disciplinary offense of distribution of a controlled substance into a state facility.  (*Id.* at 4.)  The hearing officer assessed a 180-days loss of behavior credits, and various other behavioral restrictions such as requiring petitioner to submit to one drug test a month.  (*Id.*)  Petitioner Estrada exhausted his administrative appeals and filed a habeas petition in the San Joaquin County Superior Court.  (Pet. (ECF No. 1), Ex. A; Answer ¶ 6.)

The San Joaquin County Superior Court denied the petition.  That court concluded that the procedures employed at petitioner Estrada's prison disciplinary adjudication were adequate and that the hearing officer's disciplinary finding was supported by "some evidence." *In the Matter of the Petition of John Estrada*, No. SF 117133A, at *2 (Cal. Super. Ct. San Joaquin Apr. 28, 2011) (Doc. No. 1 at 92-93)).  Estrada filed petitions with both the California Court of Appeal and the California Supreme Court seeking habeas relief on this same ground.  (Answer (Doc. No. 13) at ¶¶ 5-6.)  Both of those petitions were summarily denied.  (Id.)

**II. Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

/////

application of state law.  *See Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe,* 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412.  *Accord Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer,* 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

5

review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.___, ___, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*,131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to

/////

6

rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133 S. Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

**III. Analysis of Petitioner's Claims**

In his pending application for federal habeas relief petitioner Estrada argues that his prison disciplinary adjudication was procedurally inadequate and supported by insufficient evidence in violation of his right to due process as guaranteed by the Fourteenth Amendment. Specifically, petitioner contends that in connection with his disciplinary hearing he was unconstitutionally denied the right to call witnesses and the assistance of a "special assistant" counsel-substitute, and that the disciplinary finding of guilt was not supported by the evidence. For the reasons stated below, the undersigned will recommend that petitioner be denied federal habeas relief.

**A. Adequacy of the Procedures**

Prisoners may not be deprived of their state-created liberty interest in "good-time credit" without due process of law; however, "the full panoply of rights due a defendant" in a criminal prosecution does not apply to disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). In a prison disciplinary proceeding, procedural due process demands that the inmate "be allowed to call witnesses and present documentary evidence in his defense when permitting

7

1  him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566.
2  However, due process does not require the appointment of counsel for those charged with prison
3  rules violations. *See id.* at 570 ("[W]e are not prepared to hold that inmates have a right to either
4  retained or appointed counsel in disciplinary proceedings.").

5        *1. Failure to Assign a Staff Assistant*

6      Petitioner argues he was entitled to a counsel-substitute (staff assistant) under the
7  applicable California regulations because he "was under mental health care medication." (Pet.
8  Mem. P. & A. (Doc. No. 1) at 14:23-26.)  But as respondents point out in their answer, "federal
9  habeas corpus relief does not lie for errors of state law," but rather is limited in this context to
10 determining whether a prison disciplinary adjudication violated federal law. *Estelle v. McGuire*,
11 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 880 (1990)).  Since there is no
12 *federal* constitutional or statutory right to counsel in prison disciplinary proceedings, *Wolff*, 418
13 U.S. at 570, this aspect of the pending petition does not provide a cognizable basis for the
14 granting of federal habeas relief.

15       *2. Deprivation of Right to Present Witnesses*

16     Petitioner also argues that he was deprived of his due process right to present witnesses at
17 his prison disciplinary hearing because he "thought postponement of the disciplinary hearing
18 meant" the postponement of the Investigating Employee's assistance in the preparation of his
19 defense as well. (Pet. Mem. P. & A. (Doc. No. 1) at 13:13-19.)  Petitioner contends that, because
20 he was unable to use the Investigating Employee's assistance in preparing his defense to the
21 disciplinary charge, he was deprived of his right to present witnesses at the hearing.

22     Respondents counter there is "no evidence in the state court record that [petitioner] ever
23 requested witnesses," and "the record shows[] Estrada refused to talk to the Investigative
24 Employee, stating '[n]o comment, I don't want to talk about this.'" (Answer (Doc. No. 13) at
25 6:10-17.)

26     Here, review of the record indicates that there is no indication or evidence that petitioner
27 ever requested the appearance of witnesses at his disciplinary hearing.  In this regard, the hearing
28 officer's report states that petitioner did not request witnesses at his disciplinary hearing.  (Pet.

(Doc. No. 1), Ex. F at 1-2.)  The Investigating Employee's report states that petitioner did not cooperate with her.  Petitioner has simply presented no evidence that he attempted to call witnesses on his behalf at the challenged disciplinary hearing but was prevented from doing so.  Therefore, the state court's decision rejecting this aspect of petitioner's claim for habeas relief was not unreasonable.[2]

### B.  Application of the "Some Evidence" Standard Here

"The 'some evidence' standard is minimally stringent," and a decision will be upheld under that standard if there is any evidence in the record that could support the conclusion reached by the factfinder.  *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994) (citing *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987)).  *See also Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir. 1986).  "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits.  This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced.'"  S*uperintendent v. Hill*, 472 U.S. 445, 455 (1985) (quoting *United States ex rel. Vajtauer v. Comm'r of Immigration*, 273 U.S. 103, 106 (1927)).  *See also Cato*, 824 F.2d at 705 ("[T]here must be some indicia of reliability of the information that forms the basis for prison disciplinary actions.") Determining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence.  S*uperintendent v Hill*, 472 U.S. at 455; *Toussaint*, 801 F.2d at 1105.  The question is whether there is any reliable evidence in the record that could support the conclusion reached.  *Id.*

/////

---

[2]  Petitioner also contends that "the San Joaquin County Superior Court did not address [his] due process [procedural] claims, and thus [petitioner] requests the Court make an independent [de novo] review of the record" on these claims "to determine whether he is entitled to habeas relief."  (Pet. Mem. &. A. (Doc. No. 1) at 10:2-4.)  However, as discussed above, the San Joaquin County Superior Court did address petitioner's federal claim that the disciplinary decision was not supported by some evidence.  Because petitioner has not sufficiently rebutted the presumption that his other federal procedural claims were adjudicated on the merits as well, *Johnson*, 133 S. Ct. at 1091, de novo review does not apply.  Rather, this court is to apply the deferential standard provided for in 28 U.S.C. § 2254(d).

Here, petitioner argues that "there is no evidence that Mr. Estrada purchased any drugs . . . [or] sold any drugs to anyone.  In fact there is no evidence that Estrada was aware of the telephone call between Inmate Gonzalez and his sister Joanna . . . or that [Estrada] was the one that sent the money."  (Pet. P. & A. (Doc. No. 1) at 16:24-28.)

Respondents counter the "Superior Court noted that information was received that Estrada was involved in a criminal conspiracy . . . ," and "that there was evidence that another inmate had spoken to his sister about money that was sent to procure narcotics . . . .  The sister indicated that the money came from 'Silent Estrada from San Jose.'"  (Answer 7:24-28.)  Respondents argue that, therefore, "the state court decision which is entitled to deference must stand."  (*Id.* at 8:8-9.)

Here, the state court evaluated the evidence of phone calls in which it was said that Gonzalez's sister received money from "Silent Estrada from San Jose."  Petitioner Estrada admitted at his prison disciplinary hearing that, prior to his incarceration, he lived in San Jose.  That evidence must be considered together with the confidential informant information implicating petitioner in the introduction of controlled substances into the prison.  Based on that evidence, the undersigned concludes that the San Joaquin County Superior Court's determination that the prison disciplinary finding of guilt was supported by "some evidence" was not unreasonable in light of the minimally stringent nature of that standard of proof.

**IV. Conclusion**

Accordingly, for all the reasons set forth above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  See Rule 11, *Federal Rules Governing Section 2254 Cases in the United States District Courts* (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: July 15, 2013

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:gp
Estrada.1615.hc